***E-Filed 04/02/2010***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JOHN M. HIGDON, individually and on behalf of all others similarly situated,

    Plaintiff,

 v.

PACIFIC BELL TELEPHONE COMPANY, d/b/a AT&T CALIFORNIA, a California Corporation,

    Defendant.
_____/

No. C 08-03526 RS

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND REQUIRING FURTHER BRIEFING ON SUBJECT MATTER JURISDICTION**

I. INTRODUCTION

  In this putative class action, defendant Pacific Bell Telephone Company, d/b/a AT&T California ("AT&T") moves to dismiss plaintiff John M. Higdon's fourth amended complaint ("4th AC") in its entirety, and alternatively to strike portions thereof. In accordance with Civil Local Rule 7-1(b), the Court has determined that the motions are capable of disposition without oral argument. For the reasons stated below, the motion to dismiss is granted without leave to amend as to the first claim for relief in the 4th AC for violation of the Federal Communications Act of 1934 ("FCA"). Without the one federal claim remaining in the operative complaint, and in the absence of any apparent basis under the Class Action Fairness Act ("CAFA") on which to ground federal

1  jurisdiction, the parties are directed to submit further briefing to address the prospect of dismissal of

2  this action pursuant to 28 U.S.C. § 1367, which provides for the dismissal of pendent state law

3  claims in certain circumstances.

## II.  BACKGROUND

6        The 4th AC alleges that AT&T, together with its affiliates, is a major provider of local

7  exchange telecommunications services throughout California and approximately 22 other states.

8  Among other services, AT&T offers "Caller ID," which enables call recipients to see the names and

9  phone numbers of their callers before actually answering the phone (provided such information is

10 available to AT&T).  The price for this service is about ten dollars per month, or in some cases it is

11 included as part of a bundled or premium service offering.

12       As with most utilities, telephone service providers operate in a heavily regulated industry.

13 AT&T's Caller ID program, like its other services, is governed by tariffs that AT&T files with the

14 California Public Utilities Commission ("CPUC") and which the CPUC must approve.  These tariffs

15 provide, in pertinent part: "Caller Identification (Caller ID) . . . displays the name and telephone

16 number of an incoming call on a specially designed telephone or a device that the customer attaches

17 to their existing telephone."  Schedule Cal. P.U.C. No. A5 § 5.4.10.B.12.  "Caller ID . . . [is]not

18 available to customers with the following types of lines:  Farmer Lines, Manual and Direct

19 Connections . . . [and others].  [This feature] . . . will operate only when both the caller and the call

20 recipient are served from capable switches."  *Id.* § 5.4.10.C.16.  "The customer of the Caller ID

21 feature must have a Customer Premises Equipment (CPE) device to be able to display the caller's

22 name and number. . . .  The called party will not receive the name and telephone number when a

23 caller chooses to block the delivery of their name and telephone number.  The called party will

24 receive a message on their display unit which will indicate that the calling party does not want their

25 name and telephone number delivered."  *Id.* § 5.4.10.C.18.

26       Higdon alleges that these Caller ID tariffs obligate AT&T to provide the names and phone

27 numbers of all incoming calls, unless the caller has blocked his or her identification for privacy

reasons. Moreover, he alleges, AT&T actively markets its Caller ID service with the promise that the names and phone numbers of all unblocked numbers will appear. In fact, however, according to Higdon, AT&T provides the name *and* phone number only if the incoming caller is inside the AT&T network. For all other callers, AT&T provides just the phone number and lists the caller's name as "unknown" or "unavailable."[1] Higdon claims that the names of out-of-network callers are available to AT&T for a price, but AT&T as a general matter chooses not to pay for it. Such a policy, he contends, violates the CPUC-approved tariffs. Further, he claims AT&T intentionally fails to disclose the policy to its Caller ID subscribers, ultimately causing them to receive only a "partial benefit."

Higdon commenced this putative class action in July 2008 on behalf of himself and "[a]ll persons and entities located within the State of California who have subscribed to AT&T's Caller ID service anytime from July 14, 2004, to the present." The initial complaint has been amended by stipulation several times, culminating in the 4th AC. The 4th AC states claims for violation of the FCA; the California Public Utilities Code; California's Unfair Competition Law ("UCL"); and California's Consumer Legal Remedies Act ("CLRA"). It also claims unjust enrichment, breach of contract, and fraudulent nondisclosure. AT&T has moved to dismiss the complaint in its entirety, citing Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(6), and 12(f). AT&T alternatively moves to strike the CLRA claim on the grounds that Higdon failed to comply with certain statutory notice requirements.

III. JURISDICTION

It is well-settled that "by whatever route a case arrives in federal court, it is the obligation of both district court and counsel to be alert to jurisdictional requirements." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 593 (2004). Here, the 4th AC posits that this Court has original jurisdiction over this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §

---

[1] The 4th AC suggests, without elaborating, that AT&T also sometimes "strategically decides to access [names] from other databases" as well as from AT&T's own databases. 4th AC at 6.

No. C 08-03526 RS
ORDER

3

1332(d)(2)(A). *See* 4th AC at 4. Section 1332(d)(2)(A) provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" The 4th AC acknowledges that "defendant Pacific Bell Telephone Company is a California Corporation doing business as AT&T California, with its principal place of business located in San Francisco, California." 4th AC at 3-4. The 4th AC then alleges that "the [putative] class is composed of 100 or more members, and some members of the [putative] [c]lass are *residents of, or entities formed under, states other than California* (see 28 U.S.C. Section 1332(d)(2)(A))." *Id.* at 4 (emphasis added). Nonetheless, the putative class is defined just a few paragraphs earlier as "[a]ll persons and entities *located within the State of California* who have subscribed to AT&T's Caller ID service anytime from July 14, 2004, to the present." *Id.* at 2 (emphasis added). These inconsistent complaint averments cast significant doubt on whether federal subject matter jurisdiction premised on CAFA is a reality in this action.[2]

At first blush, the potential unavailability of jurisdiction under CAFA may not defeat federal subject matter jurisdiction, as the 4th AC's first claim is based on an alleged violation of the Federal Communications Act, 47 U.S.C. §§ 201(b), 206 & 207—a claim for relief implicating 28 U.S.C. § 1331 (federal question jurisdiction). On occasions when a complaint (inadvertently or otherwise) invokes an incorrect jurisdictional provision, district courts have felt free to analyze alternate bases for jurisdiction. *E.g.*, *Criswell v. Convenience Stores, Inc.*, 2008 WL 3092277 (M.D. Ga. Aug. 4, 2008) (noting that "[u]nless Piggly Wiggly or Pepsi has recently become a branch of the federal government, Plaintiffs have clearly invoked the wrong jurisdictional statute," but proceeding to consider whether diversity jurisdiction existed in the case); *SED, Inc. v. City of Dayton*, 515 F. Supp. 737, 739 (D.C. Ohio 1981) (noting the complaint cited 28 U.S.C. § 1331 instead of § 1332 but electing to analyze it as if it invoked the correct jurisdictional basis, because Federal Rule of Civil

---

[2] The fact that Higdon has previously amended his complaint four times suggests he has already been afforded an unusual number of opportunities to fine-tune his allegations.

NO. C 08-03526 RS
ORDER

4

Procedure 8(e) cautions courts that "pleadings must be construed so as to do justice"). Accordingly, federal question jurisdiction under 28 U.S.C. § 1331 could provide a basis for jurisdiction in the event that plaintiffs identify a viable federal claim.

## IV.  ANALYSIS

A.  <u>Federal Communications Act of 1934</u>

As noted above, Higdon's first claim for relief relies upon the FCA, specifically 47 U.S.C. §§ 201(b), 206, and 207. Section 201(b) provides in relevant part: "All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful[.]" Section 206 provides: "In case any common carrier shall do . . . any . . . thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee." Finally, § 207 provides: "Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies." Here, Higdon asserts that AT&T's alleged failure to inform subscribers of its Caller ID policies is an "unjust or unreasonable" practice under § 201(b), and therefore he is entitled to bring suit under §§ 206 and 207. AT&T requests that this claim be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Higdon has no private right to sue.[3]

---

[3] Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

1   While acknowledging that the plain language of § 201(b) arguably implies the existence of a private right to sue, the Ninth Circuit has recently held otherwise. In the February 2010 case of *North County Communications Corp. v. California Catalog & Technology*, the Court held that before any private party can proceed under § 201(b), it must first obtain a determination from the Federal Communications Commission ("FCC" or "the Commission") that a challenged practice is, in fact, "unjust or unreasonable" within the meaning of the statute. 594 F.3d 1149, 1159 (9th Cir. 2010) (holding that "an FCC determination is integral to claims involving § 201(b)"). This holding, the Court found, is consistent with the underpinnings of the modern federal regulatory scheme, which affords unique powers to the FCC and similar government agencies. *Id.* (citing "the broad language" of the FCA). In short, Congress designed the FCA with the intent to put it "within the Commission's purview to determine whether a particular practice constitutes a violation for which there is a private right to compensation." *Id.*; *see also In re Long Distance Telecomm. Litig.*, 831 F.2d 627, 631 (6th Cir. 1987) ("This charge [of unreasonable practices] is a determination that Congress has placed squarely in the hands of the FCC.").

*North County* itself affirmed a district court decision dismissing a § 201(b) claim after finding that the FCC had not yet determined the practice at issue was "unjust or unreasonable." The Court rejected outright the plaintiff's contention that no such FCC determination was required, explaining that the plaintiff was "essentially request[ing] that the federal courts fill in the analytical gap stemming from the absence of a Commission determination regarding § 201(b)." Allowing the plaintiff's claim to go forward, the Court explained, "'would . . . put interpretation of a finely-tuned regulatory scheme squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission.'" *Id.* at 1158 (quoting *Greene v. Sprint Comm'ns*, 340 F.3d 1047, 1053 (9th Cir. 2003)).

*North County* was decided several months after Higdon filed his 4th AC. Nonetheless, he now attempts to distinguish it, claiming that the plaintiff in *North County* had complained about the alleged violation of a federal regulation, whereas this case addresses the violation of a state tariff. Yet that, if anything, underscores the unlikelihood of a threshold FCC determination regarding the

challenged practice. As the Ninth Circuit has explained, "[t]he [FCA] gives the FCC broad jurisdiction over interstate and foreign telephone communications and the carriers which provide such communications; intrastate communications are excepted. . . . [Intrastate providers are] not subject to the comprehensive direct supervision of the FCC and [do] not file general tariffs with it." *Phonetele, Inc. v. Am. Tel. & Tel. Co.*, 664 F.2d 716, 723 (9th Cir. 1981). The FCA itself, moreover, provides that nothing contained in the chapter on common carriers "shall be construed to apply or to give the Commission jurisdiction with respect to . . . charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier[.]" 47 U.S.C. § 152(b). The presence of a state tariff here suggests it is unlikely the FCC will *ever* make the § 201(b) determination requisite for federal jurisdiction in this Court, as required in *North County*.

If Higdon's action does not lie under § 201(b), then the remedies described in §§ 206 and 207 are similarly unavailable. According to *North County*, "there must be an independent right to compensation for a private right of action to lie under §§ 206 and 207." *North County*, 594 F.3d at 1160; *Greene v. Sprint Comm'ns Co.*, 340 F.3d 1047, 1050-51 (9th Cir. 2003) ("[T]he private right of action created by §§ 206 and 207 extends only to violations of this chapter[.]"); *see also Global Crossing Telecomm'ns, Inc. v. Metrophones Telecomm'ns, Inc.*, 550 U.S. 45, 53 (2007) ("[T]he purpose of § 207 is to allow persons injured by § 201(b) violations to bring federal-court damages actions."). For these reasons, AT&T's motion to dismiss Higdon's first claim must be granted. Moreover, since no relevant § 201(b) determination exists in this case—and § 152(b) of the FCA suggests it is unlikely Higdon could get such a determination even if he sought it—there is no conceivable way in which he could amend his FCA claim to make it viable. Therefore leave to amend is not appropriate. *See Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007) (noting that dismissal without leave to amend is appropriate when there is no possibility that the plaintiff could state an actionable violation of the statute at issue).

B. Section 1367

Because the only potential basis for subject matter jurisdiction beyond CAFA has now been dismissed, further explanation from the parties will be necessary to determine if any federal class action provision provides a basis for this case to proceed in this Court. If not, under 28 U.S.C. § 1367(c)(3), when "the district court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over any remaining pendent state-law claims. In exercising this discretion, courts are to consider such factors as "economy, convenience, fairness, and comity." *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir.1995). This case is still at the pleading stage, and relatively little judicial time has been invested in it so far. Moreover, the pendent state law claims appear complex and perhaps novel. The parties are therefore directed to submit further briefing explaining their position as to whether CAFA jurisdiction exists and, if not, whether the Court should exercise jurisdiction over the remainder of the lawsuit based on § 1367. In the meantime, the motions filed by AT&T remain under submission with regard to all claims in the lawsuit, with the exception of the first claim for relief under the FCA.

## V. CONCLUSION

AT&T's motion to dismiss is hereby granted in part as to the first claim in the 4th AC without leave to amend. Higdon is directed to submit a supplemental brief no later than **April 16, 2010**. AT&T should file a response no later than **April 30, 2010**. Neither brief should exceed ten pages. The matter will then be taken under submission without oral argument pursuant to Civil Local Rule 7-1(b).

IT IS SO ORDERED.

Dated: 04/02/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

NO. C 08-03526 RS
ORDER